ORIGINAL

FILED IN CLERK'S OFFICE

DEC 2 _ 2003

UNITED STATES DISTRICT COURT   LUT...
NORTHERN DISTRICT OF GEORGIA   By: _____ Clerk
ATLANTA DIVISION                        Deputy Clerk

GOODY'S FAMILY CLOTHING, INC.   )
                                )
      Plaintiff              )
                                )
vs.                               )     CIVIL ACTION FILE
                                )     NO: 1:03-CV-0668 GET
CENTRAL SPRINKLER COMPANY a/k/a )
TYCO FIRE PRODUCTS, LP and       )
LIFE SAFETY, INC.               )
                                )
      Defendants           )

## DEFENDANT CENTRAL SPRINKLER COMPANY'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS TESTIMONY

COMES NOW Defendant CENTRAL SPRINKLER COMPANY a/k/a TYCO FIRE PRODUCTS, LP (hereinafter "Defendant" or "Central Sprinkler"), and pursuant to Local Rule 26.2(c) moves this Court to exclude the proffered testimony of Plaintiff's Expert Witnesses.

The testimony of Mr. Franck should be excluded because he is not competent to offer expert testimony, and the methods and analysis used by Mr. Franck to support his opinion are unreliable and will not assist the trier of fact. The testimony of Mr. Wright should also be excluded because the methods and analysis used to support his opinion are not reliable and will only confuse the jury.

2 \

Therefore, neither of these proffered expert witness opinions are admissible under the standards established by Daubert and Kumho Tire and they should each be excluded.

A legal brief containing detained record references and citations of authority is submitted in support of this motion.

Respectfully submitted this 23rd day of December 2003.

Timothy H. Kratz
Georgia Bar No. 429297
Jefferson M. Allen
Georgia Bar No. 010898
Attorneys for Defendant
Central Sprinkler Company

MCGUIREWOODS LLP
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia  30309
Telephone:  (404) 443-5730
Facsimile:  (404) 443-5784

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GOODY'S FAMILY CLOTHING, INC.    )
                                 )
        Plaintiff                )
                                 )
vs.                              )        CIVIL ACTION FILE
                                 )        NO:  1:03-CV-0668 GET
CENTRAL SPRINKLER COMPANY a/k/a )
TYCO FIRE PRODUCTS, LP and       )
LIFE SAFETY, INC.                )
                                 )
        Defendants               )
_____ )

## CERTIFICATE OF SERVICE

I HEREBY certify that I have served a copy of DEFENDANT CENTRAL
SPRINKLER COMPANY'S Daubert Motion upon counsel for all parties by hand
delivery, addressed to:

    Samuel S. Woodhouse, Esquire
    Cozen O'Connor
    SunTrust Plaza, Suite 2200
    303 Peachtree Street, NE
    Atlanta, Georgia  30308
    Attorney for Plaintiff

This ____ day of December, 2003.

                                        Jefferson M. Allen
                                        Georgia Bar No. 010898

McGuireWoods LLP
1170 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 443-5704
\\COM\377909.1

3

ORIGINAL

FILED IN CLERK'S OFFICE

DEC 2 3 2003

LUTHER D.
By: _____ Clerk
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GOODY'S FAMILY CLOTHING, INC.　)
　　　　　　　　　　　　　　　　)
　　　Plaintiff　　　　　　　　　)
　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　)　　CIVIL ACTION FILE
　　　　　　　　　　　　　　　　)　　NO: 1:03-CV-0668 GET
CENTRAL SPRINKLER COMPANY a/k/a )
TYCO FIRE PRODUCTS, LP and　　　)
LIFE SAFETY, INC.　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　Defendants　　　　　　　　)
_____)

## BRIEF IN SUPPORT OF DEFENDANT CENTRAL SPRINKLER COMPANY'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS TESTIMONY

COMES NOW Defendant CENTRAL SPRINKLER COMPANY a/k/a TYCO FIRE PRODUCTS, LP (hereinafter "Defendant" or "Central Sprinkler"), and pursuant to Local Rule 26.2(c) shows the Court as follows in support of its Motion to Exclude proffered testimony from Plaintiff's expert witnesses Harold E. Franck and T. Steven Wright:

## I.　INTRODUCTION AND STATEMENT OF FACTS

Defendant Central Sprinkler Company manufactured the model ELO-16 GB FR fire sprinkler heads that were installed in two retail stores belonging to Plaintiff Goody's Family Clothing located in Princeton, West Virginia and Ft. Oglethorpe,

Georgia. (Complaint ¶ 8). The sprinkler heads were sold by Central to defendant Life Safety Inc.[1] and Life Safety installed the sprinkler heads in the stores. (Complaint ¶ 9). After the sprinkler heads were sold and delivered to Life Safety and subsequently installed in the Goody's, they were in the exclusive control of Life Safety and Goody's, and Central had no control over how they were handled, installed or maintained.

There were two sprinkler "discharge incidents" at the Ft. Oglethorpe store – one in October 2000 and another in April 2001. (Complaint ¶ 13-14). There were two sprinkler discharge incidents at the Princeton store – one in March 2001 and another in June 2001. (Complaint ¶ 11 & 12). One of the sprinkler heads that discharged in the Princeton store was manufactured in 1999 while the other was manufactured in 2000. (Franck Dep. p. 67). The record does not indicate the year of manufacture of the sprinkler heads from the Ft. Oglethorpe store.

A "discharge incident" is where a fire sprinkler head is activated and discharges water in the absence of a fire. Potential causes of discharge incidents in general include environmental conditions (heat without fire), vandalism, improper

---

[1] Defendant Life Safety has been served with a copy of the summons and complaint but is currently in default.

installation or handling, or manufacturing problems. (Wright Report p. 6, O'Neil Report pp. 8-9).

### The "experts'" investigation

Central Sprinkler requires that sprinkler heads be installed with a particular wrench that is specifically designed for the installation of Central Sprinklers. (Central product data sheet for ELO-16 sprinkler, Ex. 2 Franck Dep.; Wright Report Attachment C.) Neither of the Plaintiff's proffered "experts" performed any investigation into the method or manner of installation of the sprinkler heads to confirm that the proper wrench was used, neither contacted Life Safety to discuss the installation, and neither reviewed any documents related to the installation of the sprinklers. (Dep. Franck p. 22, 34, 36; Dep. Wright at 21, 22). Neither of the Plaintiff's experts performed any investigation or examination of the quality control procedures or the manufacturing process of the Central model ELO-16 sprinkler heads. (Dep. Franck p. 29, 68; Dep. Wright p. 46).

Mr. Wright, the expert proffered to provide testimony regarding the Ft. Oglethorpe discharge events (that occurred in the spring of 2001) was first retained by Plaintiff on September 4, 2003, and he issued his report on September 10, 2003. (Dep. Wright p. 4).       At no time during his limited investigation or analysis did Mr. Wright review or examine the actual sprinkler heads that discharged at the Ft.

3

Oglethorpe store.  Instead, he examined other sprinkler heads that were removed from the store – but not the actual sprinkler heads that are alleged to be defective. (Dep. Wright p. 23).  Defendants have requested that Plaintiff produce the actual sprinkler heads for inspection but the heads have not been produced to Defendant or Plaintiff's expert.  (Defendant's Request for Production No. 2).

### *Central testing and quality control*

The Central model ELO-16 sprinkler heads are subject to individual quality control testing as well as batch testing to ensure that each sprinkler head can withstand a pressure of 500 pounds per square inch without leaking or inadvertent discharge.  (O'Neil Report p. 8-9 and Ex. 3 – 6; Declaration of Carmine Schiavone Ex. B, C & D).  The individual unit and quality control protocols are followed by Central in order to maintain Central's Underwriters' Laboratory listing for these sprinkler heads.  (Id.).  There is no evidence in the record that the four sprinkler heads at issue in this case failed any of Central's individual or batch quality control procedures.  The only evidence in the record is that all Central sprinkler heads pass rigorous quality control tests to identify sprinkler heads with cracks or flaws before they leave the factory. (O'Neil Report p. 10-11).  The fact that Plaintiff's "experts" have found no physical evidence to support their conclusions is one of the major reasons their opinions should be excluded.

4

### *The Plaintiff's Allegations*

Plaintiff's complaint attempts to state three causes of action – 1) Strict liability for design and/or manufacturing defects in the sprinkler heads, 2) Breach of Warranty related to the sprinkler heads and 3) Negligence in the design and/or manufacture of the sprinkler heads.  Plaintiff's theory of the case is that the unspecified design or manufacturing defects caused or allowed micro fractures in the glass bulbs of the sprinkler heads, that these fractures allowed the heat sensing alcohol within the bulbs to leak out, and that the glass bulbs failed, allowing water to flow from the sprinkler head. (Plaintiff's response to Defendant's Interrogatory No. 2).  Plaintiff proffers the expert reports and testimony from Mr. Franck and Mr. Wright to support this theory.   However, as will be demonstrated in this brief, neither of these "expert" opinions is valid or reliable, and neither will assist the trier of fact in this case, and therefore the proffered testimony from each expert should be excluded.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### *Daubert and Kumho Tire Standards*

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), established the trial court's gatekeeping duty in considering the admissibility of expert testimony.  Daubert holds that an expert's testimony is

5

admissible only if it "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999), the Supreme Court clearly extended the trial judge's gatekeeping obligation established in Daubert, to non-scientific expert testimony. 526 U.S. at 141. See also, Dale v. General Motors, 109 F. Supp. 2d 1376, 1379 (N.D. Ga. 1999).

Federal Rule of Evidence 702 was amended in accordance with Daubert and Kumho Tire and sets forth the requirements for the admissibility of Mr. Franck's and Mr. Wright's testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit's recent opinion Hudgens v. Bell

Helicopters/Textron summarizes the analytical steps the Court should take when considering a Daubert motion:

> A three pronged test controls the determination of whether expert opinion evidence is admissible. Admission is proper if (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact through the application of scientific, technical or specialized expertise to understand the evidence or to determine a fact in issue."

328 F.3d 1329, 1338 (11th Cir. 2003). As will be shown in this brief, Franck's and Wright's opinions fail to meet the standards required for the admissibility of expert testimony and therefore should be excluded by this Court.

**A.    The Testimony Proffered By Harold E. Franck Should Be Excluded Because Franck Is Not A Competent Witness To Offer An Opinion Regarding Design Or Manufacturing Defects In The Sprinkler Heads, His Opinion Is Not Reliable, And His Opinion Will Not Assist The Trier Of Fact.**

Franck offers a single opinion that is relevant to this case:

> The physical evidence indicates that the most likely scenario for the [sprinkler head] discharges is the loss of the alcohol within the tubes of the sprinklers. Therefore the sprinklers were defective.

(Expert Report of Harold E. Franck ("Franck Report") p.4, Dep. Franck Ex. 1).

Because Franks is not qualified to offer this opinion, and because Franks did not conduct a reasonable examination or analysis that would arguably support such a

7

conclusion, this opinion will not assist the trier of fact and should therefore be excluded.

> 1)   Franck is not qualified to offer expert testimony regarding the design or manufacture of fire sprinkler heads.

The CV of Harold Franck demonstrates that he has absolutely no education, training, or work experience that would qualify him to offer an expert opinion regarding the quality of the design or to evaluate the manufacturing processes of the Central Model ELO-16 sprinkler head. (Plaintiff's Rule 26 Disclosure Ex. A). While Franck does have a degree in Electrical Engineering, he has no formal education regarding structural design or manufacturing of mechanical components, such as the sprinkler head involved in this case. (Franck CV ). His stated areas of expertise are "Accident reconstruction, Fire Determination, Electrical Engineering." While his CV indicates that he has authored over a dozen technical publications, none of them are even remotely related to fire protection systems, manufacturing processes, quality control procedures, or design of mechanical components. His academic work is exclusively in the field of electrical engineering. His miscellaneous "Short Courses and Seminars" indicate fire origin training with a focus on forensic examination and electrical fire origin, but demonstrate no training on fire suppression systems or sprinklers. Finally, his list

of consulting work demonstrates that it has been almost exclusively limited to electrical systems and controls.

It is Plaintiff's burden to demonstrate, by a preponderance of the evidence, that Mr. Franck is competent to offer the proffered opinion.  Shirath v. Sandoz Pharmaceuticals Corp., 131 F. Supp. 2d 1347, 1351 (11th Cir. 2001).  There is no evidence in the record before this Court, and certainly not a preponderance of the evidence, that Franck is qualified to offer an opinion in this case.  While Mr. Franck may be qualified to render expert opinions in electrical engineering or forensic fire investigation, he is totally unqualified to offer any opinion regarding the design or manufacturing process of the Central ELO-16 fire sprinkler, and therefore his proffered testimony should be excluded on this basis alone.  See e.g., McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)(affirming exclusion of expert testimony based on failure of proponent to demonstrate competence).

> 2)  Franck's proffered opinion testimony is unreliable because he failed to undertake the basic fundamental examination or analysis necessary to support his conclusion.

As remarkable as it may seem, the entire basis for Franck's opinion appears to be that because sprinkler heads are not supposed to discharge in the absence of fire – and because some sprinklers did discharge in the absence of fire – therefore

those sprinklers must be defective.  Franck admitted that he has no knowledge or evidence about how the sprinkler heads were actually manufactured, or about Central's quality control process for the manufacture of these sprinkler heads. (Franck Dep. p. 68, 119).  Therefore, presumably the only basis for his conclusions would be his actual examination of the sprinkler heads in his possession.  But the total failure by Franck to undertake even the minimally necessary investigation and analysis renders his opinion totally unreliable and subject to exclusion.  See Jack v. Glaxo Welcome, Inc., 239 F. Supp. 2d 1308, 1316 (N.D. Ga. 2002)(rejecting expert testimony that is based upon unreliable methodology) and McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

This is particularly true in light of the fact that Franck admitted that he observed no physical evidence from his examination of the sprinkler heads that discharged to support his theory of manufacturing defect.

> Q:     And you retained the heads that discharged in both the March 13th and the June 3rd events?
>
> A:     Yes, I retained one from each of those events.
>
> Q:     Did you do any testing on those heads?
>
> A:     Not much you can do. . . . I looked at them.
>
> Q:     Visual inspection.  And that visual inspection itself doesn't show the type of defects that is your opinion of what would cause it?

A:     It does not.

(Franck Dep. p. 73).

Franck's report contains minimal investigation of other potential causes of the discharge.   He conducted cursory environmental examination to rule out excessive heat as a potential cause.   (Franck report p. 2)   He also ruled out improper installation as the cause of the discharges simply based upon the fact that there were three separate sprinkler head discharges at three different times. (Franck Dep. 11, 23).   However, he did not conduct any of the minimally necessary and basic investigation procedures to support this conclusion.  He made no attempt to speak with Life Safety, the other defendant in this action and installer of the sprinkler heads.   (Franck Dep. p. 22).   He conducted no review or examination of any documentation from Life Safety regarding the actual or stated procedures used by that company to install the sprinkler heads.  (Franck Dep. p. 34, 37, 125).  He was informed that there had been a series of fire alarm problems at the store when it was first opened, but he did not analyze whether these false alarms had an impact on the discharge. (Franck Dep. p. 70).  He had no knowledge and conducted no investigation regarding the testing of the sprinkler system when it was first installed.   (Franck Dep. p. 37, 125).   These gaps or failures of

investigation alone justify exclusion of the opinion. See Lawson v. Richards, 1999 U.S. Dist. Lexis 19822 at 11 (N.D. Ga.).

Most significantly however, Franck had no knowledge about what tool was used by Life Safety to install the sprinkler heads, and his opinion about the proper tool to use for the installation directly conflicts with the stated guidelines and instructions provided by Central. (Franck Dep. p. 36). The product specifications for the ELO – 16 sprinkler head identifies the specific wrench that is to be used for installation, the "ELO/ELOS/ESFR Combination Part # 1092." Plaintiff's other proffered expert, T. Stephen Wright even noted the manufacturer's specification for the proper wrench to be used during installation (Wright Dep. p. 49). Remarkably, Franck opined that he was not aware of any guidelines for the use of a special tool for installation (Franck Dep. p. 34), and he even stated that it would be acceptable to use a variety of other tools:

> Q:   . . . we talked earlier about using a specific wrench for the head. If you're using this specific wrench, you'd expect it to fit nicely on the nut?
>
> A:   Correct.
>
> Q:   But if you weren't using that specific wrench, you may not stay on the nut properly? Is that one of the dangers of using a different wrench?
>
> A:   Let me say that having built a few engines, and know something about torquing and cranking a wrench, that you

12

> could use a crescent wrench, would be sufficient.  Or you could use an open ended wrench quite sufficiently .
>
> I haven't measured this to see exactly what size it is, whether its metric or whether its English or if it's an odd size which would require a special wrench.  But you know, a crescent wrench would fit it.

(Franck Dep. p. 100).  Without knowledge about what tool was actually used for the installation or whether the tool used complied with the manufacturer's guidelines, Franck cannot reasonably exclude improper installation by Life Safety as the cause of the discharge incidents.

This admission by Franck is significant, because the failure of an expert to exclude or explain other possible causes of a product failure (other than the alleged defect of design or manufacture), can render the opinion so unreliable as to be inadmissible.  See Lawson, *supra* at 11 and Jones v. Sofamor, 1999 U.S. Dist. Lexis 6421 at 11 (N.D. Ga.) (each specifically excluding expert testimony based upon the expert's failure to exclude other possible causes for the product failure other than the alleged defect).  For an expert opinion to be reliable (and thus admissible) it must explain why other possible causes were excluded, in order to provide a basis to justify reliance on the opinion by the trier of fact.

> Experts must do something more than just "rule out" other possible causes.  They must explain how they were able to "rule in" the product in question.  If all an expert does is rule out other possible causes, he or she may fail to account for other potential (and

13

> sometimes unknown or unthought of) causes. When an expert only rules out causes, the trier of fact knows only what did not cause the harm. This does not necessarily aid the trier of fact in determining what did cause the harm – and that is what the law requires in tort cases.

Siharath v. Sandoz, 131 F. Supp. 2d 1347, 1371-1372 (N.D. Ga. 2001). In this case, Franks completely fails, in both his report and in his deposition, to explain or "rule in" why he believes there was a manufacturing defect. The sum total of his analysis was that he did not see evidence of improper installation (although he admittedly did not look for any) and therefore he concluded that there must be a product defect. Furthermore, his opinion directly contradicts the manufacturer's specifications regarding the appropriate tool for installation. At its best, Franck's opinion is based upon faulty and unreliable logic and reasoning. At its worst, this opinion is simply a professional witnesses' deduction to support a chosen conclusion preferred by Plaintiff's counsel. Either way, Franck's "opinion" does not pass muster under Daubert or Kumho Tire and should be excluded.

> 3) Franck's proffered testimony should be excluded because it does not fit with the evidence before this Court.

The third element of the three pronged analytical test under Daubert is "whether there is an appropriate relevance, or 'fit,' between the expert's opinion and the facts of the case . . . and there is no 'fit' where there is simply too great an analytical gap between the data and the opinion offered." Siharath, *supra* at 1352.

14

Furthermore, an opinion may be excluded even where a competent expert has used valid and reliable methodology if the Court finds an absence of facts to support the proffered opinion.

> [N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the date and the opinion offered.

<u>Jack</u>, *supra* at 1319. <u>See also</u>, <u>Jones</u>, *supra* at 11 (excluding expert opinion where "an unfathomable gap lies between the factual and medical backgrounds of these two patients and [the expert's] conclusions regarding the cause of their conditions.").

In this case, there is a similar unfathomable gap between the evidence in the record, the facts and evidence that were reviewed by Franck, and his conclusion that the sprinkler heads in the Princeton, West Virginia store suffered from a manufacturing defect. Franck never examined or reviewed any documents or evidence regarding the manufacturing process. He admitted that he observed no physical evidence from the sprinkler heads themselves to support his "micro fracture" manufacturing defect theory. He admitted that he performed no tests on the sprinkler heads to identify or discover evidence of any defective condition. The only support for Franck's "opinion" is the fact that the sprinkler heads did

discharge, and the fact that he did not observe evidence of improper installation (although as noted he did not examine or investigate that likely cause of the sprinkler discharges). There is clearly too great an analytical gap between the evidence and Franck's conclusion for this opinion to assist the trier of fact, and therefore this proffered testimony should be excluded.

### B. The Testimony Proffered By T. Steven Wright Should Be Excluded Because Wright Never Examined The Sprinkler Heads That Actually Discharged, Therefore His Opinion Is Not Reliable, And His Opinion Will Assist The Trier Of Fact.

Wright's proffered opinion that is relevant to this case is as follows:

The cause of the failure of the 3mm glass bulb capsule fusible element is a manufacturing defect or improper handling of the sprinklers prior to or during installation by the sprinkler system installer (Life Safety, Inc.)

As with Franck, Wright failed to undertake basic investigation necessary to support this opinion. He made no examination of Life Safety's installation of the sprinkler heads – he simply concluded that improper installation was a possible cause of the sprinkler discharge. (Wright Dep. pp. 21 – 22). Prior to issuing his opinion he had no information about what wrench(s) the Life Safety installers may have used and he had no information about Life Safety's installation protocol, or whether Life Safety followed the basic industry standard of care for the installation of the sprinklers. (Wright Dep. pp. 22 and 49). Similarly, he conducted no

investigation, examination or analysis of the design of the Central sprinklers or the manufacturing process – he simply concluded that manufacturing defect was a possible cause of the discharge. He had no knowledge about testing or quality control procedures at the manufacturing plant. (Wright Dep. p. 46). However, he did admit to having evidence that contradicted his opinion – specifically Wright admitted that when he compared the sprinkler heads provided for his examination with the product specifications he found no deviations between the heads he examined and the specifications. (Wright Dep. pp. 18-19). All of these failures to follow basic forensic and analytical procedures renders Wright's opinion, much as Franck's, totally unreliable and subject to exclusion under the authority of Daubert and Kumho Tire.

However, there is an even stronger reason to reject and exclude Wright's proffered opinion, which is that he never actually examined the sprinkler heads that discharged at the Ft. Oglethorpe, Georgia store. Thus, because he did not even examine the definitive evidence in the case, and because he cannot even offer an opinion regarding the probability that the discharge was the result of an installation problem versus a manufacturing defect, his proffered testimony would only serve to confuse the jury and should be excluded.

Wright testified that received the sprinkler heads he examined came from an entity called ATS in Atlanta Georgia, (Wright Dep. p. 23) and that the ATS representative told him the sprinkler head samples that were forwarded to Wright did not contain the sprinkler heads that actually discharged at the Ft. Oglethorpe store. Wright claimed that he asked ATS what happened to the sprinkler heads that did discharge, and that ATS told him they did not know. (Wright Dep. p. 25). Wright further testified that he asked Plaintiff's counsel Sam Woodhouse about the sprinkler heads, and Wright said that he was told Goody's had them. (Wright Dep. p. 26). Wright testified that he asked to examine the actual sprinkler heads that discharged as part of his investigation, but that they were never provided to him, and that he was never told why they were not produced. (Wright Dep. p. 26). Similarly, Defendant has requested the opportunity to examine the actual sprinkler heads through discovery, but thus far the actual heads have not been produced, and Defendant has not had the opportunity to actually examine the heads that allegedly discharged.

Given these undisputed facts regarding the lack of the factual basis for Wright's opinion, his proffered testimony must be excluded. This Court can and should conclude that an opinion that a sprinkler head may be defective, where there was no examination of the actual sprinkler head that is allegedly defective, is

unreliable and does not follow basic forensic examination protocol, and thus should not be considered by the jury. Furthermore, Wright's opinion that the sprinkler head discharge was cause by either a manufacturing defect or improper installation cannot possibly assist the trier of fact in this case. Wright specifically admitted that he cannot differentiate between manufacturing defect or improper installation as the cause of the discharge, and Wright admitted that he cannot even say which cause is more likely or more probable. (Wright Dep. p. 8 & 15). This "opinion" essentially asks the jury to flip a coin in its deliberation. This is clearly improper, because it will not assist the trier of fact, and therefore the opinion should be excluded.

Assuming for argument only that Wright did examine the actual sprinkler heads that discharged, his "opinion" that the cause of the discharge was either a manufacturing defect or improper installation should still be excluded because Wright provides no explanation for how he reached that conclusion - i.e. how that cause was "ruled in." See Siharath, 131 F. Supp. at 1362, 1363, and discussion infra at pp. 12-14. Without an identification or explanation of the forensic evidence that arguably supports Wright's conclusion, that opinion is essentially pure speculation, and certainly does not assist the trier of fact in resolving disputed issues in this case. And if the "opinion" evidence will not assist the trier of fact, it

is not admissible under Federal Rule of Evidence 702. Therefore, Plaintiff cannot sustain its burden to support the admission of Wright's proffered testimony and it should be excluded from evidence.

**CONCLUSION**

Both Franck and Wright opine that the sprinkler head discharges may have been caused by manufacturing defects in the sprinkler heads, but neither "expert" points to any tangible evidence gathered from their analysis or investigation to support their conclusions. Wright admits, and Franck denies (without any investigation) that improper installation could have caused the discharge incidents. Franck offers this opinion despite admitting that his physical and visual examination found no physical evidence to support his conclusion from his examination of the sprinkler heads that discharged. Wright offers his opinion without even conducting an examination of the actual heads that discharged – because they have still not been produced for examination by the Plaintiff Goody's. The expert testimony proffered by Plaintiff is unreliable, not supported by the physical evidence in this case, and will not assist the trier of fact. Therefore, because this testimony fails to satisfy the standards for admissibility established by Daubert and Kumho Tire, it must be excluded.

Respectfully submitted this 23rd day of December 2003.

Timothy H. Kratz
Georgia Bar No. 429297
Jefferson M. Allen
Georgia Bar No. 010898
Attorneys for Defendant
Central Sprinkler Company

MCGUIREWOODS LLP
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia  30309
Telephone:  (404) 443-5730
Facsimile:  (404) 443-5784

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GOODY'S FAMILY CLOTHING, INC.      )
                                   )
        Plaintiff                  )
vs.                                )          CIVIL ACTION FILE
                                   )          NO: 1:03-CV-0668 GET
CENTRAL SPRINKLER COMPANY a/k/a )
TYCO FIRE PRODUCTS, LP and         )
LIFE SAFETY, INC.                  )
                                   )
        Defendants                 )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of DEFENDANT CENTRAL
SPRINKLER COMPANY'S Brief in Support of Daubert Motion upon counsel for
all parties by hand delivery, addressed to:

    Samuel S. Woodhouse, Esquire
    Cozen O'Connor
    SunTrust Plaza, Suite 2200
    303 Peachtree Street, NE
    Atlanta, Georgia  30308
    Attorney for Plaintiff

This _____ day of August, 2003.

                            _____
                            Jefferson M. Allen
                            Georgia Bar No. 010898

McGUIREWOODS LLP
1170 Peachtree Street, N.E.
Suite 2100, The Proscenium
Atlanta, Georgia  30309
Telephone: (404) 443-5704